IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-177-BO-BM

| | | |
|---|---|---|
| VICTORIA HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COCA-COLA BOTTLING CO. | ) | |
| CONSOLIDATED, | ) | |
| | ) | |
| Defendant. | ) | |

This complaint comes before the Court regarding defendant's Coca-Cola Bottling Company's (hereinafter CCCI) motion to dismiss the plaintiff Victoria M. Howell's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [DE 8]. The plaintiff has responded. The motion is therefore ripe for disposition. For the following reasons, the motion to dismiss is granted.

## I. BACKGROUND

Plaintiff Victoria M. Howell initiated her lawsuit in September 2025, lodging eight claims against defendant CCCI pertaining to her time as an inventory clerk at CCCI's facility in New Bern, North Carolina and to her subsequent termination from the company in November 2024. [DE 1]. Ms. Howell started at CCCI in May 2018. [DE 1, ¶ 6]. Later CCCI hired her as a full-time inventory clerk at the New Bern branch on February 15, 2022. *Id.* ¶ 7. Subsequently, she received a diagnosis of bipolar disorder and other mental health conditions, and she disclosed those conditions to her supervisors and requested reasonable accommodations. *Id.* ¶ 8. On July 28, 2023, Howell called in sick due to vomiting, aches, and chills. *Id.* ¶ 15. She alleged that her manager,

Greg Capps, told her that he didn't care if she "had to wear a plastic bag around [her] neck to throw up in, [she] needed to be present for inventory every day." *Id.*

From there, Howell submitted Family and Medical Leave Act (hereinafter FMLA) paperwork through Unum on October 10, 2023, and on December 18, 2023, she informed her manager that she would be absent from work indefinitely to enter a partial hospitalization program (hereinafter "PHP"). *Id.* ¶ 67. She later returned to work on March 21, 2024, with accommodations that she states were not what she or her psychiatrist requested. *Id.* ¶ 23. On May 1, 2024, Howell notified her manager that she would not return to work and would go on long-term disability leave. *Id.* ¶ 25. On October 1, 2024, CCCI denied her request for an extension of long-term disability leave, and Howell filed an appeal on October 3, 2024. *Id.* ¶ 26.

On November 14, 2024, Howell discovered that a letter regarding her termination had been delivered to her grandparents' house instead of her current address: something she alleges she updated in CCCI's system two years prior. *Id.* ¶ 27. The termination letter gave her a reply deadline of November 14, 2024, which she did not meet because she did not receive the letter at the correct address by the deadline. *Id.* ¶ 28. On December 4, 2024, the North Carolina Department of Commerce Division of Employment Security determined that Howell was "discharged as a result of medical reason(s)" and that she qualified for unemployment benefits because her discharge did not relate to employee misconduct. *Id.* ¶ 29.

Counts one and two contain allegations of Americans with Disabilities Act (hereinafter ADA) violations for failure to provide reasonable accommodations and disability discrimination. *Id.*; *see* 42 U.S.C. § 12101. Counts three and four in the complaint assert violations of the FMLA for claims of interference and retaliation. *See id.*; 29 U.S.C. § 2601. Counts five and six allege acts of retaliation that violate the North Carolina Retaliatory Employment Discrimination Act

2

(hereinafter REDA) based on the plaintiff's complaints to OSHA and workers' compensation claim. See id.; N.C. Gen. Stat. § 95-241. Count seven claims the plaintiff was wrongfully discharged in violation of North Carolina public policy. Count eight asserts a claim of intentional infliction of emotional distress (hereinafter IIED) under North Carolina common law.

The defendant moves to dismiss counts one, two, five, six, and seven for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and to dismiss counts three, four, and eight for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). [DE 8]. The plaintiff responded in opposition on November 3, 2025. [DE 10]. This matter is now ripe for disposition.

## II. LEGAL STANDARDS

**A. Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject-matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

3

**B. Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III. ANALYSIS

**A. Counts One and Two: ADA Failure to Accommodate and Disability Discrimination**

Before any plaintiff files a complaint under Title I of the ADA, the plaintiff must exhaust all administrative remedies by filing specific charges with the Equal Employment Opportunity Commission (hereinafter EEOC) and receive a right-to-sue letter. 42 U.S.C. § 12117(a); *Davis v. N. Carolina Dep't of Correction*, 48 F.3d 134, 140 (4th Cir. 1995).

The initial complaint provided by the plaintiff does not state that she filed an EEOC charge, asserted ADA claims in her charge, or received a right-to-sue letter. [DE 1]. While counsel attached an EEOC "Determination and Notice of Rights" [DE 1-2], that document is the plaintiff's right-

4

to-sue letter and demonstrates that she filed a charge with the EEOC. However, the EEOC's right-to-sue letter does not reveal the specific claims or legal theories presented to the EEOC. Therefore, it does not establish that the ADA claims raised in this action were among the claims exhausted with the EEOC. Additionally, the written complaint does not mention the charge of discrimination or explain its contents. The written complaint contains no allegation that the written complaint contains no allegation that the EEOC charge included the ADA claims asserted here.

Because the plaintiff has not shown that the ADA claims raised in this action are included in, or reasonably related to, the claims presented in her EEOC charge, she has not established that she exhausted her administrative remedies for those claims. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013). Therefore, counts one and two are DISMISSED for lack of subject-matter jurisdiction.

**B. Counts Five and Six: REDA Claims**

Under the North Carolina Retaliatory Employment Discrimination Act (REDA), a plaintiff must file a written complaint with the North Carolina Commissioner of Labor (NCDOL) and obtain a right-to-sue letter before suing in court. *See* N.C. Gen. Stat. §§ 95-242(a)–(c). The complaint here contains no allegation that the plaintiff filed with the NCDOL or received a right-to-sue letter. The plaintiff's argument that REDA exhaustion is not mandatory for supplemental claims in federal court is unsupported and in fact runs contrary to precedent in North Carolina. *See e.g., Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 495–96 (E.D.N.C. 2020); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 727–28 (W.D.N.C. 2012). Therefore, counts five and six are DISMISSED for lack of subject-matter jurisdiction.

5

## C. Count Seven: Wrongful Discharge in Violation of Public Policy

Plaintiff's claim for wrongful discharge in violation of North Carolina public policy relies on the allegations which form the basis of her REDA claim. "REDA is recognized as a source [of] public policy, allowing a plaintiff to pursue 'both a statutory claim under REDA and a common law wrongful discharge based a violation of REDA.'" *Canales v. OPW Fueling Components LLC*, No. 5:22-CV-00459-BO, 2023 WL 6295120, at *4 (E.D.N.C. Sept. 27, 2023) (quoting *White v. Cochran*, 216 N.C. App. 125, 133, 716 S.E.2d 420 (2011)). Where a plaintiff relies on REDA as the source of public policy for a common law wrongful termination claim, however, she must satisfy REDA's exhaustion requirements. *Lockie v. Staples Cont. & Com., Inc.*, No. 3:14-CV-00521-FDW, 2015 WL 93643, at *4 (W.D.N.C. Jan. 7, 2015) ("the exhaustion requirement under REDA applies to derivative REDA-based claims, such as Plaintiff's wrongful discharge claim based on the public policy found in REDA"). Plaintiff's wrongful termination claim depends on the viability of her REDA claim, because the public policy she invokes is the same policy underlying REDA, which constitutes the North Carolina General Assembly's position on workers' compensation-based retaliation. *Smith v. Computer Task Group, Inc.*, 568 F. Supp. 2d 603, 621 (M.D.N.C. 2008). Because the Court has dismissed plaintiff's REDA claim for failure to exhaust administrative remedies, her wrongful discharge claim based on the same public policy necessarily fails as well. Therefore, count seven is DISMISSED.

## D. Count Three: FMLA Interference

In order to launch an FMLA interference claim, the plaintiff must allege: (1) entitlement to an FMLA benefit; (2) employer interference with that benefit; and (3) resulting harm or prejudice. *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

*1. The December 2023 Write-Up*

First, this allegation made in this lawsuit fails because the write-up predated the plaintiff's FMLA-activity. The plaintiff notified her manager of her PHP on December 18, 2023. [DE ¶ 19]. Under current precedent, if there is any type of disciplinary action taken *before* protected activity, then it cannot constitute interference unless causation is shown. *Hannah P. v. Haines*, 80 F.4th 236, 246 (4th Cir. 2023).

Second, a written reprimand on its own is not an adverse employment action for the purposes of FMLA lawsuits. *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015) (quoting *Jeffers v. Thompson,* 264 F.Supp.2d 314, 330 (D. Md. 2003)). The plaintiff does not claim that the write-up led her to lose any FMLA benefit, prevented her from taking time off, or prejudiced her in any way. Instead, the plaintiff decided to take FMLA leave and enter the PHP. Therefore, the December 15, 2023 write-up cannot support count three for FMLA interference.

*2. January 27, 2024 Scheduling Attempt*

The plaintiff does not claim that there was a requirement for her to return to work, that her leave ended abruptly, or that she suffered adverse consequences. An unsuccessful scheduling attempt [DE 8, p. 2] does not interfere with, restrain, or deny FMLA rights. 29 U.S.C. § 2615(a)(1); *see generally Adams*, 789 F.3d at 427. The plaintiff alleges she returned to work on her own terms [DE 1, p. 23], which undermines any claim of prejudice she makes against the defendant. Her "chilling effect" theory is not supported by precedent in this circuit. *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 796 (4th Cir. 2023) (holding that the FMLA "provides no relief *unless the employee has been prejudiced* by the violation.") (emphasis added). An FMLA interference requires a deprivation of benefits, not only an atmosphere that discourages their exercise. *Id.* Therefore, count three is DISMISSED.

7

### E. Count Four: FMLA Retaliation

In order to establish a prima facie case for retaliation claims, a plaintiff must show: (1) protected activity; (2) adverse employment action; and (3) causal link. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). A complaint should state facts and information that would support a plausible inference that adverse action was taken because of protected activity. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). The Court concludes that the December 15, 2023 write-up predated the plaintiff's protected activity, taking FMLA leave, by three days, and was not a materially adverse employment action. Because the write-up occurred before the protected activity, it cannot support the causal link required for a retaliation claim.

The November 2024 termination lacks a causal link or connection to her protected activity. The plaintiff's FMLA leave ended in March 2024; she took long-term disability leave beginning May 1, 2024; her termination followed denial of her disability extension in November 2024. [DE 1, ¶ 76]. The interval between the last FMLA-protected activity and termination was roughly eight months, and a six-month gap is sufficient to negate any inference of causation. *Spida v. BAE Sys. Info. Sols., Inc.*, 2016 U.S. Dist. LEXIS 173311 *16 (E.D.N.C. 2016). Mere temporal proximity exceeding six months, therefore, is insufficient. Count four is dismissed.

### F. Count Eight: Intentional Infliction of Emotional Distress

Under North Carolina common law, a claim for IIED must pass three prongs: (1) extreme and outrageous conduct; (2) intended to cause severe emotional distress; (3) causation of severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452–53 (1981). However, "extreme and outrageous" is a high bar. The behavior must be so extreme that it goes beyond all possible bounds of decency and is utterly intolerable in a civilized society. *See Turner v. Thomas*, 369 N.C. 419, 427 (2016).

8

While the plastic bag comment is the most unsavory example of defendant's behavior, it does not meet the extreme and outrageous standard. For example, in *Hogan*, the court found no extreme and outrageous conduct in an instance where a supervisor "screamed and shouted at plaintiff, called her names, and threw menus at her." *See e.g.*, *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493 (1986). The plastic bag comment is less severe, and therefore does not pass the standard set by North Carolina courts. Therefore, count eight is DISMISSED.

## IV. CONCLUSION

The defendant's motion to dismiss [DE 9] is GRANTED. All claims are DISMISSED. The Clerk is directed to enter judgment in favor of the defendant and close the case.

SO ORDERED, this 17 day of July 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9